CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
11/24/2020
JULIA C. DUDLEY, CLERK
BY:   s/ A. Little
      DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
## LYNCHBURG DIVISION

| | |
|---|---|
| CAROLYN M.,[1] | |
| *Plaintiff*, | CASE NO. 6:19-cv-00034 |
| v. | |
| ANDREW M. SAUL, COMMISSIONER OF SOCIAL SECURITY,[2] | MEMORANDUM OPINION |
| *Defendant*. | JUDGE NORMAN K. MOON |

This matter is before the Court on the Parties' cross motions for summary judgment. Dkts. 14, 20. Pursuant to Standing Order 2011-17 and 28 U.S.C. § 636(b)(1)(B), the Court referred this matter to Magistrate Judge Robert S. Ballou for proposed findings of fact and a recommended disposition. In his Report and Recommendation ("R&R"), Judge Ballou determined that the Commissioner's final decision was supported by substantial evidence and advised this Court to deny Carolyn's motion and grant the Commissioner's motion. Dkt. 24. Carolyn timely filed her objections, Dkt. 25, obligating the Court to undertake a *de novo* review of the R&R. *See* 28 U.S.C. § 636(b)(1)(C); *Farmer v. McBride*, 177 F. App'x 327, 330 (4th Cir. 2006). The Commissioner also filed a timely response to Carolyn's objections. Dkt. 26. The Court finds that Carolyn's objections do not have merit and adopts Judge Ballou's R&R in full.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts refer to claimants only by their first names and last initials.

[2] Because Andrew M. Saul became Commissioner of Social Security in June 2019, Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

## STANDARD OF REVIEW

Objections to a magistrate judge's report and recommendation under Federal Rule of Civil Procedure 72(b) "train[] the attention of both the district court and the court of appeals upon only those issues that remain in dispute after the magistrate judge has made findings and recommendations." *United States v. Midgette*, 478 F.3d 616, 621 (4th Cir. 2007) (citing *Thomas v. Arn*, 474 U.S. 140, 147–48 (1985)). The district court must determine *de novo* any portion of the magistrate judge's report and recommendation to which a proper objection has been made. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1)(C); *Farmer*, 177 F. App'x at 330–31.

In conducting this review, this Court must affirm the Administrative Law Judge's ("ALJ") factual findings if they are supported by substantial evidence and were reached through application of the correct legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019); *Bird v. Comm'r of Soc. Sec.*, 669 F.3d 337, 340 (4th Cir. 2012). Under this standard of review, the Court must "look[] to an existing administrative record and ask[] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." *Biestek*, 139 S. Ct. at 1154 (internal citations omitted). Substantial evidence requires more than a mere scintilla—but less than a preponderance—of evidence. *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). A finding is supported by substantial evidence if it is based on "relevant evidence [that] a reasonable mind might accept as adequate to support a conclusion." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam).

Where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled," the Court must defer to the ALJ's decision. *Id.* A reviewing court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal citations omitted).

"Ultimately, it is the duty of the [ALJ] reviewing a case, and not the responsibility of the courts, to make findings of fact and to resolve conflicts in the evidence." *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Thus, even if the Court would have made contrary determinations of fact, it must nonetheless uphold the ALJ's decision, so long as it is supported by substantial evidence. *See Whiten v. Finch*, 437 F.2d 73, 74 (4th Cir. 1971).

## ANALYSIS

In February and May 2016, Carolyn filed claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging a disability beginning on December 22, 2015—amended to February 22, 2016 at her administrative hearing. Administrative Record ("R.") 433–40, 499, 126. Carolyn's previous claims for DIB and SSI were denied in an ALJ decision on December 24, 2015. R. 258–74. In June 2016 and again on reconsideration in October 2016, the Social Security Administration denied her claim. R. 275–336. Carolyn requested an administrative hearing and appeared before Administrative Law Judge Mary Peltzer ("the ALJ") on April 12, 2018. R. 229–54. The ALJ concluded that Carolyn is not disabled on September 19, 2018. R. 126–41. Carolyn requested that the Appeals Council review the ALJ's decision and submitted additional evidence in support of her claim. R. 7–13, 17–122, 148–228. The Appeals Council made the additional evidence part of the record but determined that the evidence would not change the outcome of the decision and thus denied her request for review. R. 1–6.

To determine whether Carolyn was disabled, the ALJ was required to work through a five-step framework, considering, in sequence, whether Carolyn (1) was working; (2) had a severe medical impairment that met the Social Security Act's duration requirement; (3) had an impairment listed or equivalent to one listed in the Act's regulations; (4) could return to her past relevant work based on her residual functional capacity ("RFC"); and, if she could not, whether

3

(5) she could perform other work based on her RFC. 20 C.F.R. § 404.1520(a)(4); *see Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017). At step one, the ALJ found that Carolyn met the Act's insured-status requirements from February 22, 2016 to December 31, 2018 but had not engaged in substantial gainful activity ("SGA") since February 22, 2016. R. 129. At step two, the ALJ found that Carolyn "had the following severe impairments: fibromyalgia with trochanteric bursitis; bilateral elbow epicondylitis; left wrist and hand tendonitis; degenerative joint disease, knees (post-operative on left); hypertension; obstructive sleep apnea; diabetes mellitus with kidney disease; and anemia." *Id.* The ALJ also found that Carolyn's "depression is non-severe" and determined that she had "no difficulties in being able to understand, remember, or apply information; no worse than mild difficulties in being able to interact with others; no worse than mild difficulties in being able to concentrate, persist, or maintain pace; and no difficulties in being able to adapt and/or manage herself from a mental standpoint." R. 131. In reaching this conclusion, the ALJ explained why she assigned less weight to the opinion of Carolyn's treating counselor, Ms. Keyes. R. 131–32. At step three, the ALJ found that Carolyn's severe impairments— considered alone or all together—did not meet or medically equal the relevant listings in the Act. R. 132–35. At step four, the ALJ assessed Carolyn's RFC and found that she could "perform a range of light work" with some limitations. R. 135. Specifically, Carolyn can stand and walk up to four hours per workday; occasionally climb stairs and ramps; never climb ladders, ropes, and scaffolds; occasionally balance, knell, crouch, and crawl; frequently stoop, handle, and finger; have no more than frequent exposure to extreme heat, extreme cold, humidity, and wetness; have occasional exposure to vibrations and workplace hazards such as dangerous moving machinery; and have no exposure to unprotected heights. *Id.* As a result of these limitations, Carolyn could not return to past work as a home attendant and special shopper. R. 139. However, at step five, the

ALJ found that Carolyn could perform certain unskilled light occupations—including storage facility rental clerk, officer helper, and parking lot attendant—that offered a significant number of jobs in the national economy. R. 140.

In the R&R, Judge Ballou concluded that the Commissioner's final decision was supported by substantial evidence with respect to each of Carolyn's arguments. First, he determined that the ALJ's finding that Carolyn's depression is non-severe is supported by substantial evidence; the ALJ gave good reasons for her decision to give the opinions of state agency mental consultants great weight while giving the opinion of Carolyn's treating counselor Ms. Keyes little weight. Dkt. 24 at 5–13. Second, he determined that Carolyn failed to establish that additional testimony or clarification from consultative physician Dr. Woodson was reasonably necessary for full presentation of her case, and therefore the ALJ did not abuse her discretion in denying Carolyn's request to subpoena Dr. Woodson. *Id.* at 13–16. Third, he determined that although Carolyn's additional medical records relate to the relevant period, Carolyn did not give a good reason why the records that predated the ALJ's decision were not submitted to the ALJ instead of the Appeals Council. In addition, he determined that the records do not warrant remand because they are cumulative and duplicative of other medical record evidence, and thus there is no reasonable probability that they would change the outcome of the decision. *Id.* at 16–21.

Carolyn objects to all three of these determinations. Dkt. 25. This opinion addresses each of the alleged errors in turn. For both the reasons stated below and those expressed in Judge Ballou's R&R, Carolyn's objections will be overruled.

1. **ALJ's Finding that Depression Is a Non-Severe Impairment and Decision to Assign Little Weight to Treating Counselor Ms. Keyes's Opinion**

Carolyn argues that the ALJ's finding that her depression is a non-severe impairment is not supported by substantial evidence. She insists that the R&R and the ALJ "cherry-picked" evidence, "neglect[ed] . . . the large volume" of evidence indicating that Carolyn's depression is severe and failed to explain this "omission," and ignored precedent in giving treating counselor Ms. Keyes's opinion little weight. Dkt. 25 at 8–9; *see also id.* at 4–6 (listing treatment notes in the record that Carolyn alleges show "severe symptoms and impairments"). Carolyn contends that the ALJ's determination that her depression is not severe "cannot be supported by substantial evidence" because "there are substantially *more* medical records evidencing [her] severe depressive and anxiety symptoms which were refractory to over two years of prescribed medications and psychotherapy than [there were showing] any brief periods of subjective stability." *Id.* at 3, 7.

In the R&R, Judge Ballou determined that substantial evidence supports the ALJ's conclusion and that the ALJ had both considered the proper legal standards and explained her reasoning in reaching that conclusion. Dkt. 24 at 13. The R&R notes that Carolyn's arguments "identify some evidence at odds with the ALJ's ultimate opinion on disability," including Carolyn's own testimony at the hearing that her depression is "really bad" and her own statements on function reports that she cannot concentrate or follow instructions. *Id.* at 12. The R&R concludes, however, that the arguments "amount to a disagreement with the ALJ's interpretation of the record." *Id.* at 13. For the reasons outlined below, the Court agrees with the R&R.

A. **Limitation Findings in Four Functional Areas**

An impairment "is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). In assessing the severity of Carolyn's depression, the ALJ noted that Carolyn had received treatment for depression from her

treating psychiatrist, Dr. Fore, and treating counselor, Ms. Keyes, between October 2015 and March 2018. R. 130. In concluding that Carolyn's depression was a non-severe impairment, the ALJ considered how her depression limited her functional abilities in four areas and found that she had "'no' difficulties in being able to understand, remember, or apply information; no worse than 'mild' difficulties in being able to interact with others; no worse than 'mild' difficulties in being able to concentrate, persist, or maintain pace; and 'no' difficulties in being able to adapt and/or manage herself from a mental standpoint." R. 131. In explaining her finding, the ALJ gave "great weight" to state agency mental consultants' opinions indicating that Carolyn "does not have a 'severe' mental impairment that would limit her ability to perform work-related activities from a mental standpoint." *Id.* (citing Exhibits ("Exs.") B2A/B3A, B6A/B7A). In addition, the ALJ noted that Carolyn experienced "stability . . . on her prescribed treatment" and "lack[ed] . . . ongoing mental health complaints or abnormalities" as well as "regular and continuing specialized mental health treatment." *Id.*

"No" or "mild" functional limitation findings—if supported by substantial evidence—can justify an ALJ's conclusion that a mental impairment is non-severe. *See* 20 C.F.R. § 404.1520a(d)(1). Thus, the ALJ properly classified Carolyn's depression as non-severe if substantial evidence supports the ALJ's findings regarding the four areas of functional limitations. *See Ghaul v. Berryhill*, No. 7:16-cv-497, 2017 WL 3433216, at *5 (W.D. Va. Aug. 9, 2017).

Substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Court may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of the ALJ,

*Hancock*, 667 F.3d at 472, and must defer to the ALJ's decision where "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson*, 434 F.3d at 653. The ALJ need not discuss every piece of evidence, *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014), and the ALJ has the authority—and responsibility—to determine the weight to be given to a medical opinion in the record. *See Mastro*, 270 F.3d at 178.

Still, "[a]n ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis*, 858 F.3d at 869; *see also id.* at 866–68 (reversing and remanding where an ALJ failed to "build an accurate and logical bridge" from treating physicians' consistent medical opinions about the claimant's debilitating pain to his conclusion that those accounts should not be credited). Indeed, "'a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling,' including 'a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence.'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)) (remanding where the ALJ's explanation of the varying degrees of weight he gave to differing medical opinions about the claimant's impairments consisted of "conclusory" assertions because "the analysis is incomplete and precludes meaningful review").

### i. No Difficulties in Being Able to Understand, Remember, or Apply Information

In evaluating whether Carolyn had difficulties in being able to understand, remember, or apply information, the ALJ cited individual therapy notes from treating counselor Ms. Keyes indicating that Carolyn "did not exhibit issues with her speech, thought content, thought process, short-term memory, or long-term memory." R. 130 (citing Exs. B1F, B4F, B8F, B11F). She also cited treatment notes from treating psychiatrist Dr. Fore showing that Carolyn's "speech was

normal and her thoughts were organized and goal directed" and that she "consistently exhibited normal orientation, . . . fund of general knowledge, judgment, insight, recent memory, [and] remote memory . . . ." *Id.* (citing Exs. B4F, B8F). The ALJ also stated that Carolyn "demonstrated normal memory . . . while testifying, recalling information, responding to questions, and providing detailed information during the course of the hearing in regard to her living arrangements, activities of daily living, . . . work history, . . . medical history, [and] treatment history . . . ." R. 131. Although the ALJ acknowledged that the February 2018 form completed by Ms. Keyes indicated that Carolyn was "unable to understand, carry out, and remember simple instructions" or "make judgments that are commensurate with the functions of unskilled work," the ALJ explained that this opinion was given little weight in part because Carolyn's treatment notes did not show "issues with her speech, thought content, thought process, judgment, insight, short-term memory, [or] long-term memory . . . ." R. 131–32 (citing Ex. B6F). She also found that "Ms. Keyes relied heavily on [Carolyn's] subjective complaints of pain, paranoia, decreased appetite, sleep disturbance, and/or her reports of apathy . . . in arriving at her limitations." R. 132.

Carolyn points to two places in the record that could undermine the ALJ's finding.[3] Dkt. 25 at 4–6. Ms. Keyes's treatment notes from June 2016 state that Carolyn "continues to have memory issues and is concerned about them not improving," R. 692 (Ex. B4F), and her treatment notes from December 2016 state that Carolyn "continues to have trouble remembering things" and that she "has complained of this concern before." R. 951 (Ex. B8F). But the ALJ was required to evaluate these complaints in the context of the record as a whole, which is exactly what she did here. Relying on the totality of the evidence presented—including other treatment notes, hearing

---

[3] The Court examines only those record citations that refer to treatment notes following Carolyn's alleged disability onset date of February 22, 2016.

testimony, and state agency psychologists' opinions—the ALJ adequately explained her finding that Carolyn had no difficulties in being able to understand, remember, or apply information.

Thus, substantial evidence supports the ALJ's finding that Carolyn had no difficulties in being able to understand, remember, or apply information.

### ii.  Mild Difficulties in Being Able to Interact with Others

In assessing whether Carolyn had difficulties in being able to interact with others, the ALJ referenced treatment notes from a variety of providers showing that Carolyn "was consistently pleasant [and] well-appearing" and that Carolyn "had good hygiene" and was "cooperative." R. 130 (citing Exs. B1F–B4F, B7F, B8F, B10F–B13F). She referred to treatment notes from Dr. Fore revealing that Carolyn was "dressed properly and made fair eye contact" and that her behavior was "cooperative and attentive." *Id.* (citing Exs. B4F, B8F). The ALJ also emphasized that treatment notes from Ms. Keyes showed that her therapy "focused on helping [Carolyn] deal with various psychosocial stressors" and that Carolyn "reported that she was doing well with her prescribed treatment and able to do things like spend time with her daughter and grandchildren, attend family cookouts, and go to church services on a regular basis." *Id.* (citing Exs. B1F, B4F, B8F, B11F). The ALJ then cited Carolyn's function report from May 2016 indicating that Carolyn was able to "get along with family, friends, neighbors, authority figures, and other people without difficulty." R. 131 (citing Ex. B5E). The ALJ also noted that Carolyn "interacted and responded appropriately to questions posed to her by both [the ALJ] and [her attorney] at the hearing." *Id.*

Finally, although the ALJ acknowledged that the February 2018 form completed by Ms. Keyes indicated that Carolyn was "unable to respond appropriately to supervision, coworkers, and usual work situations," the ALJ explained that this opinion was given little weight in part because Carolyn "reported throughout the record that she was able to drive, go out alone[,] spend time with

other people, . . . get along with other people, [and] attend church services . . . ." R. 131–32 (citing Ex. B6F). She also found that "Ms. Keyes relied heavily on [Carolyn's] subjective complaints of pain, paranoia, decreased appetite, sleep disturbance, and/or her reports of apathy . . . in arriving at her limitations." R. 132.

Carolyn points to a couple of places in the record that seem to contradict the ALJ's finding. Dkt. 25 at 4–6. Ms. Keyes's treatment notes from January 2017 indicate that Carolyn "spends most of her days alone." R. 948 (Ex. B8F). Her treatment notes from March 2017 state that Carolyn "doesn't enjoy previous[ly] pleasurable activities," R. 926 (Ex. B8F), and those from November 2017 indicate that Carolyn "is very isolated." R. 857 (Ex. B8F). But, again, the ALJ was required to assess the entire record, including not just these statements but also the other treatment notes, function report, and hearing testimony. The record clearly supports the ALJ's explanation and finding that Carolyn had at most mild difficulties in being able to interact with others.

Thus, substantial evidence supports the ALJ's finding that Carolyn had at most mild difficulties in being able to interact with others.

### iii. Mild Difficulties in Being Able to Concentrate, Persist, or Maintain Pace

In determining whether Carolyn had difficulties in being able to concentrate, persist, or maintain pace, the ALJ cited treatment notes from Dr. Fore indicating that Carolyn "consistently exhibited normal . . . concentration" and "consistently denied any . . . distractibility." R. 130 (citing Exs. B4F, B8F). The ALJ also stated that Carolyn "demonstrated normal concentration[] and attention while testifying, recalling information, responding to questions, and providing detailed information during the course of the hearing . . . ." R. 131. Although the ALJ acknowledged that the February 2018 form completed by Ms. Keyes indicated that Carolyn's depression "would significantly interfere with her attention and concentration needed to perform simple tasks," the

ALJ explained that this opinion was given little weight in part because Carolyn's treatment notes did not show "issues with her . . . attention[] or concentration" and because Ms. Keyes's conclusion about Carolyn's attention and concentration was based on "speculation and conjecture." R. 131–32 (citing Ex. B6F). She also found that "Ms. Keyes relied heavily on [Carolyn's] subjective complaints of pain, paranoia, decreased appetite, sleep disturbance, and/or her reports of apathy . . . in arriving at her limitations." R. 132.

Carolyn does not cite anything in the record that could undermine the ALJ's finding. Thus, substantial evidence supports the ALJ's finding that Carolyn had at most mild difficulties in being able to concentrate, persist, or maintain pace.

### iv. No Difficulties in Being Able to Adapt or Manage Herself from a Mental Standpoint

In evaluating whether Carolyn had difficulties in being able to adapt or manage herself from a mental standpoint, the ALJ cited treatment notes from Dr. Fore indicating that Carolyn "consistently denied any suicidal or homicidal thoughts . . . ." R. 130 (citing Exs. B4F, B8F). She referenced similar treatment notes from Ms. Keyes showing that Carolyn "consistently denied issues with suicidal ideation, hallucinations, or sensory issues" and that Carolyn's "depression remained stable as recently as March 2018." *Id.* (citing Exs. B1F, B4F, B8F, B11F). The ALJ also referred to Carolyn's May 2016 function report showing that Carolyn was able to "handle stress and/or changes in her routine effectively." R. 131 (citing Ex. B5E). Although the ALJ acknowledged that the February 2018 form completed by Ms. Keyes indicated that Carolyn was "unable to deal appropriately with the stress inherent in simple work," the ALJ explained that this opinion was given little weight in part because "Ms. Keyes relied heavily on [Carolyn's] subjective complaints of pain, paranoia, decreased appetite, sleep disturbance, and/or her reports of apathy . . . in arriving at her limitations." R. 131–32 (citing Ex. B6F).

Carolyn cites several places in the record that could undermine the ALJ's finding. Dkt. 25 at 4–6. Ms. Keyes's treatment notes from February and March 2017 show that Carolyn "think[s] people are talking to her when they are not," sees "visual shadowy figures," has "paranoia" about "people following or watching her," R. 948 (Ex. B8F), and "believes a man is watching her or out to get her"; Ms. Keyes's notes also state that "both visual and auditory" "hallucinations [are] worsening." R. 926 (Ex. B8F). In March 2017, Dr. Fore's treatment notes indicate Carolyn's "paranoia about being watched" and "visual disturbances." R. 925 (Ex. B8F). Dr. Fore's notes also document that Carolyn "is scared and has begun to sleep with a knife" and "reports seeing shadows out of the corner of her eye." R. 932 (Ex. B8F).

On two occasions in April 2017, Ms. Keyes's treatment records show that Carolyn "thinks people are out to get [her]," "continues to struggle with paranoia and visual hallucinations," "continues to feel like she needs to protect herself from harm," and "saw a man dressed in red outside, but then realized she did not." R. 912, 921 (Ex. B8F). Dr. Fore's treatment notes from August 2017 state that Carolyn "[s]till voices some paranoia about situations" "but [notes] no aud[itory] or vis[ual] hallucinations" and is "still sleeping with a knife in bed" because of a "fear of [an] intruder and 'being prepared.'" R. 888 (Ex. B8F). As late as February 2018, Dr. Fore's notes indicate that Carolyn is "starting to feel more paranoid" and "cont[inues] to struggle with this fear" (noting that it is "more fear than paranoi[a]/psychosis"), as shown by the fact that she "[s]till sleeps with a knife." R. 826 (Ex. B8F). Ms. Keyes's February 2018 form also mentions that Carolyn's "baseline behavior" included "paranoia." R. 768 (Ex. B6F).

Although the ALJ does not acknowledge the references in the treatment notes to hallucinations, these minor omissions do not amount to ignoring evidence pointing to a disability. Substantial evidence supports the ALJ's overall finding that Carolyn had no difficulties in adapting

or managing herself from a mental standpoint, notwithstanding any such hallucinations. State agency psychologist Dr. Leizer's October 2016 opinion noted Carolyn's "remote [history] of [auditory hallucinations] as well as observed depressed mood," but nonetheless found that there was "no observed evidence of responses to internal stimuli" and that Carolyn's "[mental status examinations] are grossly normal." R. 315, 328 (Ex. B6A/B7A). The ALJ gave "great weight" to the state agency psychologists' opinions. The ALJ's decision demonstrates that she fully evaluated the few references to hallucinations in the context of the other treatment notes, function report, hearing testimony, and state agency psychologists' opinions, which she cited in explaining her finding that Carolyn had no difficulties in being able to adapt or manage herself from a mental standpoint.

Again, it is the duty of the ALJ, not the Court, to resolve any conflicts in the evidence. That is exactly what the ALJ did here. Substantial evidence supports the ALJ's finding that Carolyn had no difficulties in being able to adapt or manage herself from a mental standpoint.

Because substantial evidence supports the ALJ's "no" or "mild" limitation findings with respect to all four functional areas, the Court agrees with Judge Ballou's determination in the R&R and finds that substantial evidence supports the ALJ's ultimate conclusion that Carolyn's depression is non-severe. Dkt. 24 at 6, 10.

### B. Decision to Give Ms. Keyes's Opinion "Little Weight"

Social Security regulations that apply to Carolyn's claim require the ALJ to give the opinion of a treating medical source special weight. Therefore, the opinion of Carolyn's treating counselor, Ms. Keyes, must be given "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). If the ALJ declines to give

such an opinion controlling weight, she is required to give "good reasons" for doing so and must consider (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) the opinion's consistency with the record as a whole; and (5) the treating medical source's specialization. *Id.* §§ 404.1527(c)(2)–(5).

However, an ALJ is not required to give any special weight to a medical treating source's legal conclusions on issues reserved to the Commissioner "because they are administrative findings that are dispositive of a case." Instead, ALJs are only required to consider medical opinions about the "nature and severity of [a claimant's] impairment." *Id.* §§ 404.1527(d); *see Morgan v. Barnhart*, 142 F. App'x 716, 722 (4th Cir. 2005) (holding that medical opinions that claimant was "disabled," "can't work" an 8-hour day, and could not complete duties of previous job were legal conclusions not entitled to special weight).

Here, the ALJ was not required to defer to Ms. Keyes's responses to questions that addressed issues reserved to the Commissioner. The questions on the February 2018 form did not ask for Ms. Keyes's opinions on the "nature and severity of [Carolyn's] impairment[s]," but instead asked Ms. Keyes to reach legal conclusions about whether Carolyn was disabled—"an issue that is reserved to the Commissioner." *Brooks v. Comm'r of Soc. Sec.*, 207 F. Supp. 3d 361, 372 (S.D.N.Y. 2016) (finding that the ALJ was not required to defer to a treating physician's response to a question asking whether the claimant could "do a full time competitive job that requires [a certain] activity on a sustained basis"). For example, questions 3 and 4 on the February 2018 form read as follows:

3.      If placed in [a] competitive, remunerative unskilled job expected to work eight hours a day, five days a week, on a sustained basis is your patient able to:

     A.     Understand, carryout [sic], and remember simple instructions?

     B.     Respond appropriately to supervision, coworkers, and usual work situations?

     C.     Deal appropriately with the stress inherent in simple work, such as changes in a routine work setting?

     D.     Make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions?

4.      How often during a typical work day would your patient's mental health symptoms be expected to significantly interfere with attention and concentration needed to perform simple work tasks on a sustained basis?

R. 768 (B6F). These questions closely track the language of the four functional areas in which the ALJ was required to make limitation findings in assessing the severity of Carolyn's depression. Carolyn's difficulties, if any, in being able to understand, remember, or apply information; to interact with others; to concentrate, persist, or maintain pace; or to adapt and/or manage herself from a mental standpoint—particularly in the context of a "typical workday" for a "competitive, remunerative unskilled job"—are legal findings reserved for the Commissioner rather than medical assessments within a treating counselor's expertise. Since these questions ask the respondent to make legal findings, Ms. Keyes's responses to them are legal conclusions not entitled to deference.

Because the ALJ was not required to give these legal conclusions controlling weight, the ALJ was not required to consider all the factors listed in the regulations in explaining the weight that she did assign to Ms. Keyes's opinion. Thus, although it is not clear whether the ALJ considered the length, nature, and extent of Carolyn's treatment relationship with Ms. Keyes; the frequency of Ms. Keyes's examination of Carolyn; or Ms. Keyes's specialization in deciding to give the February 2018 form little weight, her explanation for giving the form little weight was sufficiently thorough and supported by substantial evidence.

Specifically, the ALJ found that the form's conclusions were inconsistent with Carolyn's other treatment notes and Carolyn's own statements in the record, which indicated that Carolyn had no issues with speech, thought content, thought process, judgment, insight, short-term memory, long-term memory, attention, concentration, suicidal ideation, homicidal ideation, or hallucinations. *See Dunn v. Colvin*, 973 F. Supp. 2d 630, 639 (W.D. Va. 2013) (finding that the ALJ's explanation of his reasons for disregarding a treating medical source's specific functional limitation was sufficient because the limitation was "unsupported" by the medical record and inconsistent with other medical opinions). The ALJ also noted that Ms. Keyes's conclusions with respect to work limitations "relied heavily" on Carolyn's subjective complaints and were based on "speculation and conjecture." Dkt. 24 at 9 (citing R. 132).

Because the ALJ applied the correct legal standard and thoroughly explained her decision to assign Ms. Keyes's legal conclusions little weight, the Court agrees with Judge Ballou's determination in the R&R and finds that the ALJ's decision was supported by substantial evidence. Dkt. 24 at 11.

### 2. ALJ's Denial of Request to Subpoena or Submit Interrogatories to Consultative Physician Dr. Woodson

Carolyn argues that the ALJ's denial of her requests to either subpoena or submit written interrogatories to consultative physician Dr. Woodson constituted an abuse of discretion and violated her due process rights. Dkt. 25 at 12–18. Carolyn contends that several aspects of Dr. Woodson's February 10, 2018 report required clarification, including which medical records he reviewed, his background and experience with consultative examinations, his opinion about Carolyn's credibility, and inconsistencies in his limitation findings. *Id.* at 13. The ALJ denied Carolyn's request in writing, noting that she would "have an opportunity at the hearing to argue what probative value should be given" to Dr. Woodson's opinion. R. 561. The ALJ denied

Carolyn's renewed request, R. 562, for a second time in her decision. R. 126. Carolyn argues that the ALJ's ultimate decision that she has the RFC to perform light work relied heavily on Dr. Woodson's report. Dkt. 25 at 14; *see* R. 137–38. Carolyn thus objects to the R&R's determination that she did not establish that additional testimony or clarification from Dr. Woodson was reasonably necessary for the full presentation of her case. *Id.*

Under the Administrative Procedure Act ("APA"), a claimant in a disability hearing is entitled to "such cross examination as may be required for a full and true disclosure of the facts." 5 U.S.C. § 556(d). Social Security ("SS") regulations echo this discretionary standard, stating that "[w]hen it is reasonably necessary for the full presentation of a case, an administrative law judge . . . *may* . . . issue subpoenas for the appearance and testimony of witnesses . . . ." 20 C.F.R. § 404.950(d)(1) (emphasis added). An ALJ's failure to subpoena a witness is reviewable only for abuse of discretion. *Taylor v. Weinberger*, 528 F.2d 1153, 1155–56 (4th Cir. 1975).

In *Taylor*, the Fourth Circuit found that the Appeals Council abused its discretion in refusing to subpoena a witness whose statements were "crucial" to a dispositive issue and the Council had already deemed the witness's statements "significant enough to possibly affect the decision." *Id. See also Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (finding that denying a claimant's request to subpoena and cross-examine a physician was an abuse of discretion where the physician's report was "crucial to the ALJ's decision" and that interrogatories were not an adequate substitute where bias, rather than "factual questions such as foundation or expertise," was at issue); *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998) (finding subpoena and cross-examination of physician unnecessary in absence of indication that physician's report was inaccurate or biased).

The ALJ did not abuse her discretion in denying Carolyn's request to subpoena and cross-examine Dr. Woodson. Unlike in *Taylor* and *Schweiker*, Carolyn does not show that Dr. Woodson's report was "crucial" to the ALJ's decision. She has failed to demonstrate that cross-examining Dr. Woodson was "reasonably necessary for the full presentation of [her] case" or the "full and true disclosure of facts" as the APA and SS regulations require. Contrary to Carolyn's claims, the ALJ's decision cannot be characterized as "heavily rely[ing]" on Dr. Woodson's report. Dkt. 25 at 14. As the R&R notes, Dkt. 24 at 16, the ALJ gave Dr. Woodson's report partial weight to the extent that his physical exam findings were consistent with "the longitudinal record" and "the treatment and other evidence outlined throughout the decision." R. 137–38.

Carolyn fails to demonstrate that receiving answers to her questions would have any impact on the ALJ's decision. For example, Carolyn notes her concern about "internal inconsistencies" in Dr. Woodson's "manipulative" and "postural limitation findings." Dkt. 25 at 13, 15. Specifically, Carolyn points to the narrative-style "Medical Consultant Report" describing Dr. Woodson's physical exam, which indicates that she "should be able to reach, handle[,] feel, grasp, and finger *frequently*" and "should be able to bend, stoop, crouch, and squat *frequently*." R. 760. Carolyn asks the Court to compare Dr. Woodson's report to a checklist-style SS Administration form in the record. The "Medical Source Statement of Ability To Do Work-Related Activities (Physical)" form indicates that Carolyn has "no limitations in [her] use of hands" and that she can "*continuously*" reach, handle, finger, and feel, R. 763 (emphasis added), and can "*continuously*" stoop and crouch, R. 764 (emphasis added).

There is no denying these discrepancies. However, the ALJ took these inconsistencies into account when evaluating Dr. Woodson's report. The ALJ found that Dr. Woodson's opinion and the record supported a reduction to "frequently handling and fingering"—not "continuously

handling and fingering." R. 138. She gave "little weight" to Dr. Woodson's finding that Carolyn could "frequently perform all postural activities," instead determining that the record supported "more restrictive postural . . . limitations." *Id.* Ultimately, the ALJ's RFC assessment limited Carolyn to "frequent stooping" and only "occasional . . . crouching." R. 135.

The other issues that Carolyn raises with Dr. Woodson's report also lack merit. She argues that his report was deficient and biased because it lacked references to specific medical records provided to Dr. Woodson, lacked information about Dr. Woodson's medical practice and experience with consultative examinations, and did not explain his notation that "limited documentation" exists to "corroborate [Carolyn's] story." Dkt. 25 at 13, 15. The Court fails to see how the answers to any cross-examination questions or interrogatories about these issues could have influenced the ALJ's decision in any way, considering that the ALJ clearly had access to copious medical records against which to assess Dr. Woodson's report and potentially "corroborate Carolyn's story." Even taken together, the absence of this information does not raise the specter of bias. Thus, in accordance with Judge Ballou's determination in the R&R, the Court finds that the ALJ did not abuse her discretion in denying Carolyn's request to subpoena Dr. Woodson, since Carolyn has not demonstrated that such cross-examination was "reasonably necessary for the full presentation of [her] case." Dkt. 24 at 16.

Although Carolyn acknowledges that the ALJ's denial of her subpoena request is reviewable for abuse of discretion, Dkt. 25 at 17, Carolyn also seems to suggest that the ALJ violated her due process rights by denying both her request to subpoena and cross-examine Dr. Woodson and her request to send interrogatories to Dr. Woodson. Dkt. 25 at 15–17. The Fourth Circuit has not squarely addressed a due process challenge to an ALJ's denial of a claimant's

request to subpoena and cross-examine an examining physician like Dr. Woodson, although it has

held that such a denial is reviewable only for abuse of discretion. *Taylor*, 528 F.2d at 1155–56.

In *Richardson v. Perales*, the Supreme Court of the United States considered "what

procedural due process requires with respect to examining physicians' reports in a social security

disability claim hearing." 402 U.S. 389, 402 (1971). The Court concluded that

> a written report by a licensed physician who has examined the claimant and who
> sets forth in his report his medical findings in his area of competence may be
> received as evidence in a disability hearing and, despite its hearsay character and
> an absence of cross-examination, and despite the presence of opposing direct
> medical testimony and testimony by the claimant himself, may constitute
> substantial evidence supportive of a finding by the hearing examiner adverse to the
> claimant, *when the claimant has not exercised his right to subpoena the reporting
> physician and thereby provide himself with the opportunity for cross-examination
> of the physician*.

*Id.* (emphasis added). *Richardson* involved a claimant who had failed to request a

subpoena, but several circuit courts of appeals have since considered whether a claimant has an

absolute due process right to cross-examine an examining physician when the claimant does

request a subpoena. Except for the Fifth Circuit Court of Appeals, every circuit court of appeals to

address this question has applied the three-part interest balancing test in *Mathews v. Eldridge*, 424

U.S. 319 (1976), in finding that a claimant's right to cross-examine an examining physician after

requesting a subpoena is *not* absolute but rather subject to the ALJ's discretion. *See Passmore v.

Astrue*, 533 F.3d 658, 664–65 (8th Cir. 2008); *Yancey v. Apfel*, 145 F.3d 106, 113 (2d Cir. 1998);

*Flatford v. Chater*, 93 F.3d 1296, 1305 (6th Cir. 1996); *Glenn v. Shalala*, 21 F.3d 938, 988 (10th

Cir. 1994). *But see Lidy v. Sullivan*, 911 F.2d 1075, 1077 (5th Cir. 1990) (recognizing a claimant's

absolute due process right to cross-examine an examining physician upon requesting a subpoena).

Several other circuit courts of appeals have emphasized that cross-examination in SS

administrative hearings is subject to an ALJ's discretion. *See Butera v. Apfel*, 173 F.3d 1049, 1057

21

(7th Cir. 1999) (citing *Glenn* in the context of evaluating whether ALJ abused discretion in denying claimant's subpoena request); *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (noting that "[a] claimant in a disability hearing is not entitled to unlimited cross-examination" and that an ALJ "has discretion to decide when cross-examination is warranted").

In *Pope v. Berryhill*, which Carolyn cites in support of her argument, the court held that an ALJ did not abuse his discretion when he denied a claimant's witness subpoena request because he nevertheless gave the claimant an opportunity to rebut evidence by sending interrogatories to a consultative examiner. No. 2:17-cv-47, 2019 U.S. Dist. LEXIS 33657 (W.D. Va. Mar. 4, 2019) at *28. Carolyn incorrectly suggests that *Pope* stands for a categorical rule that an ALJ must grant either a subpoena request or a request to issue interrogatories in order to comport with due process. Here, as noted in the R&R, Dkt. 24 at 16, the ALJ offered Carolyn the opportunity to "argue what probative value should be given" to Dr. Woodson's report at the administrative hearing, R. 561. It does not appear from the hearing transcript that Carolyn or her counsel made any explicit argument on this issue at the hearing.

On this record—and considering the Fourth Circuit's holding in *Taylor*—the Court finds that the ALJ did not violate Carolyn's due process rights by denying her subpoena and interrogatory requests.[4]

---

[4] Carolyn also argues that the ALJ's denial of her subpoena request did not comply with the SS Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") and Program Operations Manual System ("POMS"), and that such a failure to comply with internal SS procedures constitutes reversible error because it resulted in prejudice to her. Dkt. 25 at 13, 17. HALLEX I-2-5-78 reiterates that "an ALJ will issue a subpoena if . . . [t]he claimant or ALJ cannot obtain the information or testimony without the subpoena; and [t]he evidence or testimony is reasonably necessary for the full presentation of the case." This section has already addressed why Carolyn failed to meet both of these requirements. POMS DI 29501.025 states that "[a]n administrative law judge (ALJ), the claimant, or the claimant's representative, with the ALJ's approval, *may* submit written interrogatories that require written answers to specific questions by . . . consultative examination (CE) sources." (Emphasis added.) Nowhere does it indicate that an

3. **Appeals Council's Denial of Appeal and Determination that Additional Evidence Would Not Change Outcome**

Finally, Carolyn objects to the R&R's determination that the additional medical records she submitted to the Appeals Council do not warrant remand. Dkt. 25 at 18. Carolyn argues that she was not required to show "good cause" for failing to submit these records to the Commissioner before the ALJ's decision. *Id.* at 20. She insists that these records constitute new and material evidence: they are new because they involve treatment notes from "two new providers" and show Carolyn's "worsening problems with appetite, mood[,] and paranoia," and they are material because there is a reasonable possibility that they would have changed the ALJ's decision about the severity of Carolyn's depression and the weight given to Ms. Keyes' medical source statement. *Id.* at 21.

The "Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review if the additional evidence is (a) new, (b) material, and (c) related to the period on or before the date of the ALJ's decision." *Wilkins v. Sec'y, Dep't Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991); 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). The Appeals Council will only consider additional evidence if the claimant shows "good cause" for not submitting the evidence to the ALJ before the hearing. 20 C.F.R. §§ 404.970(b), 416.1470(b); *see also id.* §§ 404.935, 416.1435. Evidence is "new" if it is not duplicative or cumulative. *Wilkins*, 953 F.2d at 96 (finding that a doctor's letter was new because "no other evidence specifically addressed th[e] issue" of whether the claimant's disability began prior to the date that the ALJ found in his decision). It is "material" if there is a reasonable possibility that the new evidence would have changed the outcome of the ALJ decision. *Id.* (finding that the doctor's letter "might

---

ALJ *must* approve a claimant's request to submit interrogatories to an examining physician. Thus, these claims lack merit.

reasonably have changed the ALJ's conclusion that [claimant] was not disabled" before the date specified in the decision).

The R&R determined that Carolyn failed to provide any reasoning, let alone "good cause" for not submitting the records to the ALJ. Dkt. 24 at 18. The R&R also concluded that the evidence was not new because it was duplicative and cumulative of evidence already submitted to the ALJ. Specifically, Ms. Keyes's treatment notes were duplicative; those from November 2018 "revealed identical findings" to those from March 2018. *Id.* at 19 (citing R. 40 and R. 1077). In addition, the treatment notes from new providers were cumulative of other providers' prior treatment notes with respect to "Carolyn's complaints of depression and anxiety, her generally normal mental status examinations, and . . . findings and treatment recommendations." *Id.* at 20. Because these medical records did not conflict with, contradict, or call into doubt the ALJ's decision based on the prior medical records, the R&R concluded that there is no reasonable possibility that these records would have changed the outcome of the ALJ decision. *Id.* at 18, 20–21.

Contrary to Carolyn's assertion that she was not required to show "good cause" for failing to submit additional evidence to the ALJ, the regulations—and the Appeals Council's denial of her request for review—make clear that she was in fact required to do so. R. 1–2 ("You must show good cause for why you missed informing us about or submitting [the additional evidence] earlier."). Merely asserting that most of the additional medical records pertain to the six-month timeframe between the administrative hearing in March 2018 and the ALJ's decision in September 2018 does not constitute "good cause." *See* 20 C.F.R. §§ 404.970(b)(1)–(3), 416.1470(b)(1)–(3).

But even if Carolyn had shown good cause, her additional evidence is neither new nor material for the reasons recited in Judge Ballou's R&R. Ms. Keyes's additional treatment notes from April to November 2018 were not new because they were duplicative, containing the same

findings of stable depression, complaints of sleep disturbance, and complaints of paranoid thoughts. Dkt. 24 at 19 (citing R. 53–55, 61–63, 68–71, 76–78, 85–87, 91–93, 107–110). The treatment notes from new providers Ms. Free and Ms. Nissley were cumulative of other providers' prior treatment notes, focusing on Carolyn's complaints of depression and anxiety, management of her mental health prescription medications, and recommendations of continued therapy with Ms. Keyes. *Id.* at 20 (citing R. 9–13, 29–35, 44–50, 115–119). Ms. Free and Ms. Nissley echoed the treatment notes from Ms. Keyes and Dr. Fore that were already in the record in reporting Carolyn's "continued symptoms of sadness, tearfulness, extreme worry, amotivation, fluctuation in eating habits and forgetfulness," and paranoid and possibly delusional thoughts against the backdrop of repeated normal mental status examinations. *Id.* (citing R. 10–11, 30–32, 45). These medical records do not conflict with, contradict, or call into doubt the ALJ's decision based on the prior medical records, so—as the R&R determined—there is no reasonable possibility that these records would have changed the outcome of the ALJ decision. *Id.* at 18, 20–21.

Finally, Carolyn's contention that *Meyer v. Astrue*, 662 F.3d 700 (4th Cir. 2011), requires remand is incorrect. In that case, the Commissioner conceded that a letter from the claimant's doctor, which was "the only opinion from a treating physician in the record," was new and material evidence. *Id.* at 705. The Fourth Circuit remanded for further fact finding after noting that the ALJ's decision itself indicated that the absence of a treating physician's opinion in the prior record "played a role in its decision" and that "other record evidence credited by the ALJ conflict[ed] with the new evidence." *Id.* at 707. This is not the case here. The Commissioner has not conceded that the additional evidence is new and material, and the analysis above illustrates that the additional evidence is neither of those things. Carolyn's additional evidence does not fill any

evidentiary gaps identified by the ALJ herself, nor does it conflict with other record evidence that the ALJ endorsed, including prior treatment records from Ms. Keyes and Dr. Fore.

Because Carolyn's additional evidence is neither new nor material, the Court agrees with the R&R's determination and finds that the additional evidence does not warrant remand. *Id.* at 21.

## CONCLUSION

For the foregoing reasons, Plaintiff's objections to the R&R will be overruled and the Court will adopt Judge Ballou's R&R in full. An appropriate order will issue.

ENTERED this  24th day of November 2020.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE